UNITED STATES BOND & MORTGAGE LIQUIDATION CORPORATION *vs.* HELEN R. BOYLE.

JUNE 6, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This action of the case in assumpsit was heard in the superior court by a justice thereof sitting without a jury. He rendered a decision for the defendant, and the plaintiff thereupon filed a motion for a new trial on the ground of newly discovered evidence. This motion was denied by the trial justice by agreement of the plaintiff, which then duly prosecuted its bill of exceptions to this court. The plaintiff now presses its exceptions to the denial of said motion, and to the decision of the case in favor of the defendant, on the ground that such decision was against the law and the evidence.

The plaintiff seeks to recover from the defendant the sum of $2200 principal and $968 interest, a total of $3168, being the unpaid balance alleged to be due on a certain instrument designated as a bond, signed by the defendant on October 31, 1928, in which instrument she acknowledged herself indebted to one Henry J. McNally in the sum of $3500, payable in installments in three years from its date, with interest. This bond, so called, was secured by a second mortgage executed by the defendant to said McNally on property which she owned in the city of New York.

It appeared from the evidence that the said bond and mortgage were duly assigned by McNally, on November 8, 1928, to United States Bond & Mortgage Corporation, a New York corporation, which in turn assigned said bond and mortgage, on November 15, 1928, to Guaranty Trust Company of New York, hereinafter referred to as the trust company. On January 10, 1935 the bank which held the first mortgage of $5000 on the defendant's property, on which was the said second mortgage, foreclosed its mortgage, receiving less than the amount due thereunder, with the result that there was a substantial deficiency. This sale wiped out the said second mortgage which secured the bond now sued on. However, the trust company, on August 24, 1936, assigned the said bond and second mortgage to the plaintiff. It also appeared from the evidence that on September 12, 1932 the trust company and the defendant entered into a

written agreement under which the payment of the principal indebtedness provided for in the bond and said second mortgage, then remaining unpaid, amounting to $2300, with interest, was extended to October 31, 1933, with provision for certain installment payments.

At the trial the plaintiff introduced in evidence the bond in question. No payments of principal or interest were indorsed upon it, although it was admitted that such payments had been made up to the latter part of 1932. The defendant filed several pleas, including one which alleged, in substance, that in the year 1932 she entered into a transaction with one of the plaintiff's predecessors in title to the bond and mortgage in question, whereby all claims against her under said bond and mortgage were extinguished. The trial justice decided in the defendant's favor on the evidence submitted by her in support of this plea.

In this connection the defendant testified, in substance, that in October 1932, soon after she had received the extension from the trust company in respect to the payments due under the bond, but before the first mortgage was foreclosed, and while she still owned the mortgaged property, she was sent for by one Farnham. He was, to the best of her knowledge, connected with the United States Bond & Mortgage Corporation and had an office in New York which, as far as she knew, was the office of that company. She had been accustomed to go frequently to that office to transact business with Farnham in connection with the said bond and mortgage.

On this occasion a deed had been prepared by which she was to convey the property to the United States Bond & Mortgage Corporation, according to her best recollection, arrangements having previously been made by Farnham, with her approval, for the carrying out of this transaction. According to her testimony, however, there was an agreement made, before she executed the deed, that, as consideration for the conveyance, the second mortgage made by her was to be cancelled, and claims against her under the bond

and mortgage were to be extinguished. She testified: . . . "In other words, I had sold it to them." She also testified that after she had executed the deed, and while still in the office, she received the sum of $150; that thereafter she made no payments on the bond and mortgage; and that no claim of any kind based on said instruments was made upon her until the present plaintiff acted in 1939.

At the trial this testimony was not contradicted by the plaintiff. It argues, however, that the trial justice should not have believed said testimony because of its improbability, under the facts and circumstances appearing in evidence, and that, in any event, it did not constitute a defense to this action, because in October 1932 the United States Bond & Mortgage Corporation was not the owner of the bond and mortgage in question, and could not lawfully agree to their extinguishment. While it is true that on the above date the apparent owner of record of said bond and mortgage was the trust company, as assignee, nevertheless certain facts appeared in the evidence from which, in our judgment, the trial justice could reasonably draw inferences that said trust company was not the real or actual owner of those instruments, but that the United States Bond & Mortgage Corporation was.

It appeared from the testimony of plaintiff's witness Lyons, who was secretary and treasurer of the plaintiff corporation, and also vice-president and secretary of the United States Bond & Mortgage Corporation, that all the assets of the last-named corporation were transferred in 1936 to the plaintiff, under a decree entered in the federal court in New York. The evidence would tend to show that bankruptcy or reorganization proceedings of some sort had been taken in that court in connection with the United States Bond & Mortgage Corporation, which, however, thereafter retained its corporate entity, although not actively engaged in business.

Under such circumstances, it would seem that the plaintiff took the assets of the United States Bond & Mortgage

Corporation, not as a *bona fide* purchaser for value without notice, but affected by such possible rights and equities of third parties against said last-named corporation as might appear. Further, in the assignment of the bond and mortgage in question by the trust company to the plaintiff in August 1936, it is clearly and definitely stated that such assignment is being made "pursuant to an order of the United States District Court for the Southern District of New York entered on the 19th day of August, 1936, in a proceeding entitled 'In the Matter of United States Bond & Mortgage Corporation, Debtor' ".

In other words, there was a clear inference that the above assignment was made under the decree of the federal court which ordered the transfer of all the assets of the United States Bond & Mortgage Corporation to the plaintiff corporation, and that the bond and mortgage in question were on the date of the assignment, as between the assignor and the assignee, an asset properly belonging to the United States Bond & Mortgage Corporation, although on the records in the name of the Guaranty Trust Company of New York. There was also in the evidence nothing to indicate that there was any happening or occurrence between 1928, when the trust company received the assignment of the bond and mortgage, and 1936, when it assigned said instruments to the plaintiff, other than the foreclosure of the first mortgage in 1935, which would change or affect the apparent real ownership to said bond and mortgage. This foreclosure affected the second mortgage, but not the bond. Therefore, it appears to be a reasonable inference that the trust company was holding said bond and mortgage in some manner for the use and benefit of the United States Bond & Mortgage Corporation. This being the case, the last-named corporation, being the actual owner of these instruments, could, in September 1932, as between it and the trust company, lawfully deal with the defendant concerning them, and bind the trust company in so doing.

Moreover, in our opinion, the testimony of the defendant was not inherently improbable. In October 1932, which was well over two years prior to the foreclosure of the first mortgage of $5000 on defendant's property, it was very possible that the United States Bond & Mortgage Corporation was willing to purchase her equity in that property for $150 in money, and an extinguishment of the amount then due under the bond secured by the second mortgage, apparently then owned by it, which sum was approximately $2300. No evidence appears that the value of the property as of that date was not reasonably sufficient to justify such a transaction.

Whether the United States Bond & Mortgage Corporation was itself named as grantee in the deed which the defendant executed in carrying out that transaction, or whether another affiliated corporation was designated by the United States Bond & Mortgage Corporation to receive the title, is not of moment in so far as the defendant's rights are concerned. There was some reference in the testimony to the fact that the grantee in that deed may have been the United States Company Builders, Inc. In any event, according to the defendant, an executed transaction for a valuable consideration was carried out. Why the bond was not surrendered to the defendant and the second mortgage discharged when she executed the above deed is not referred to in the testimony. Possibly, the instruments were then in the possession of the trust company. However, as we have indicated, they were later assigned over to the plaintiff as an asset in the liquidation of the United States Bond & Mortgage Corporation, and the plaintiff is apparently now seeking, in the performance of its duty in that connection, to realize on them.

Furthermore, according to testimony given by the plaintiff's witness Lyons, a man named Farnham was, in 1932, connected with the United States Bond & Mortgage Corporation and later, in 1936, with the plaintiff corporation. The fact, called to our attention by the plaintiff, that the

last amount credited on the second mortgage, according to certain records kept on cards, was on December 31, 1932, that is to say, some time after the transaction of October 1932, does not, in our judgment, necessarily contradict the defendant's testimony that she made no payments after the date last mentioned. There is no evidence in the case showing who made the alleged payments on principal and interest which appear as credited on said cards under the date of December 31, 1932; or when such alleged payments, if any, were actually made.

It did not appear that the witness Lyons, who was permitted to testify without objection as to the above-mentioned entries on said cars, was the person who had made such entries, or had any personal knowledge concerning them, or had kept the cards in the ordinary course of the plaintiff's business, or had received the alleged payments. The cards in question were not introduced as exhibits and the evidence tended to show that they had merely come into the plaintiff's possession from a prior holder of the bond and mortgage, probably the trust company.

After a careful consideration of all the evidence, we cannot say that the trial justice was clearly wrong in deciding that the plaintiff had failed to prove its case against the defendant by a fair preponderance of the evidence, especially in view of the inferences which may reasonably be drawn therefrom. Neither do we find that his decision was against the law. The plaintiff's exception to his decision is, therefore, overruled.

We are also of the opinion that the plaintiff takes nothing by its exception to the denial of its motion for a new trial. This is because the record shows that a stipulation was filed, signed by both parties and ordered by the trial justice to be entered, whereby it was agreed that: "Pltf's motion for new trial may be denied; plaintiff's exception may be noted."

Two affidavits setting out alleged newly discovered evidence were filed in support of the motion, but by reason of

this action of the parties in agreeing to the denial of said motion for a new trial, the trial justice was never called upon to pass upon the scope and effect of such affidavits. In our opinion, the plaintiff, under the existing circumstances, cannot expressly agree to the denial of its motion for a new trial without the trial justice's consideration of the merits of said motion and affidavits, and then be allowed to urge before us an exception to such denial. We have, therefore, not considered the affidavits in passing upon this exception which is, for the reason indicated, overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the defendant on the decision.

*J. Raymond Dubee, Asa B. Suesman, Harry Sesnovich,* of Massachusetts Bar, for plaintiff.

*McKiernan, McElroy & Going, Peter W. McKiernan* and *John C. Going,* for defendant.